UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL DE MATTIES,

                                Plaintiff,

                                                                                           DECISION AND ORDER

                                                                       06-CV-6610L

                                v.

MICHAEL J. ASTRUE[1]
Commissioner of Social Security,

                                Defendant.
_____

**INTRODUCTION**

       Plaintiff, Michael DeMatties, brings this action under 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner") that he is not disabled under the Social Security Act, and therefore, is not entitled to Social Security disability benefits.

       Plaintiff originally applied for Social Security disability insurance benefits on March 7, 2003. (Tr. 54-56).[2] He alleged that he had been disabled since July 27, 2001, due to numbness, weakness and poor coordination in his left arm and hand. (Tr. 21). Plaintiff's application was initially denied. Plaintiff then requested a hearing before an administrative law judge ("ALJ").

       The hearing was held before ALJ Robert Young on March 2, 2006. (Tr. 19). ALJ Young determined that plaintiff was not disabled under the Act (Tr. 19-28), and that decision became the final decision of the Commission on November 15, 2006 when the Appeals Council denied plaintiff's request for review. (Tr. 4-7). This appeal followed.

---

    [1]Plaintiff's complaint names former Commissioner of Social Security Joanne B. Barnhart as the defendant. Michael J. Astrue, the current Commissioner, automatically is substituted as the defendant pursuant to Fed. R. Civ. P. 25(d)(1).

    [2]"Tr." refers to the transcript of the administrative record.

The plaintiff has moved for judgment on the pleadings, or, in the alternative, for a remand for the purpose of considering new evidence. (Dkt. #3, #8). The Commissioner has cross-moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. #4). For the reasons discussed below, the Commissioner's decision is reversed, and the matter is remanded for the calculation and payment of benefits.

**FACTUAL BACKGROUND**

Familiarity with the pertinent facts, summarized below, is presumed.

Plaintiff was born June 27, 1954 and is presently 54 years old. (Tr. 219). He has a high school education. (Tr. 220). From November 1990 through July 27, 2001, plaintiff was employed by Gould's Pumps, most recently as a stockroom laborer, and also worked from 1983 through 2000 at the Geneva Foundry and for a short time, performed part-time work as a service center mechanic. (Tr. 95, 222-225, 229). The stockroom laborer position required him to transport, mix test, shovel and weigh chemicals, including frequent walking and lifting 40-50 pounds. *Id*. Plaintiff, who is left-handed, discontinued working after July 27, 2001 due to numbness and weakness in his left arm and hand. (Tr. 229-230).

In July 2001, plaintiff visited his primary care physician, complaining of pain and loss of strength in his left arm, inability to grip objects and uncontrollable curling of the fingers in his left hand. His physician referred him to neurologist Dr. Gene Tolomeo. *Id*. On July 27, 2001, Dr. Tolomeo examined plaintiff and diagnosed severe, acute and chronic denervation in multiple nerve distributions of plaintiff's left arm, "most characteristic of a severe cervical polyradiculopathy," or nerve dysfunction. (Tr. 96-97). An MRI of plaintiff's cervical spine on August 3, 2001 revealed advanced degenerative disc changes at C4-5 and C5-6, with disc spurs extending to the right side with focal cord deformity. (Tr. 98). Stenosis (narrowing of the spinal canal) of varying severity was observed at each level from C3-C7, with anterior impression on the cervical spinal cord at C6-7, where the cord was flattened. *Id*. Plaintiff was advised to discontinue working and was referred to neurosurgeon Dr. Thomas Rodenhouse for treatment. (Tr. 229).

On August 31, 2001, plaintiff was examined by Dr. Rodenhouse. (Tr. 182). Testing by Dr. Rodenhouse indicated profound weakness in the left arm, and an MRI revealed significant cord compression at C4-5 and C5-6. Dr. Rodenhouse opined that plaintiff was totally disabled from his prior employment. *Id.* During this time period, other examining neurologists diagnosed plaintiff with severe and chronic nerve dysfunction, and compression of the spinal cord and nerves.

On March 15, 2002, plaintiff underwent an anterior cervical discectomy and fusion of C4-C6, performed by Dr. Rodenhouse. (Tr. 172-173). Following the operation, plaintiff developed weakness in his upper right arm. X-rays confirmed residual osteophytic compression (impingement by bony growth) on the right side. (Tr. 168-170).

Plaintiff continued to treat with Dr. Rodenhouse, and on June 19, 2002, underwent a cervical myelogram and CT scan, which showed evidence of varying degrees of spinal stenosis, some mild cord compression, and moderate-to-severe neuroforaminal stenosis (nerve root encroachment), bilaterally from levels C3-C7. (Tr. 160-162).

On August 16, 2002, Dr. Rodenhouse opined that although plaintiff was relatively pain-free, he continued to experience significant, permanent weakness in his upper extremities, including significant weakness in plaintiff's left hand, weak triceps and absent left triceps reflex, which rendered him totally disabled. (Tr. 153-157).

On December 17, 2002, plaintiff was examined by physical therapist Stacy T. Griffin, who completed a physical capacity evaluation. (Tr. 105-126). Griffin opined that plaintiff could perform "sedentary-light" work for an eight-hour workday, but was limited to occasional bending and stair climbing, occasional overhead reaching, and occasional reaching with either arm. Plaintiff's fine motor skills were classified as "poor," and his leg lift, shoulder lift, carry, one-hand carry, hand grip, key pinch, and palmar pinch were rated "very poor." (Tr. 120-121).

In January 2003 and February 2004, plaintiff was examined by examining physician Dr. Roy Hepner in connection with his Workers' Compensation claim. Dr. Hepner determined that plaintiff had neck stiffness and pain, limited neck extension, mildly diminished bending and rotation,

diminished left elbow sensitivity, weak left finger extension and flexion, and decreased reflexes on the left side. Dr. Hepner diagnosed multilevel cervical degenerative disc disease with foraminal stenosis, status post discectomy and fusions (failed), and left C7 radiculopathy and opined that plaintiff had "a moderate to marked temporary partial disability." (Tr. 127-128, 194-196).

On April 28, 2003, plaintiff was seen by Dr. Rodenhouse. Although motor power in plaintiff's right hand had returned, plaintiff continued to experience significant weakness in his left upper extremity, and "[h]is triceps and intrinsics in his left hand [we]re very weak as they were preoperatively." (Tr. 151).

The same day, plaintiff was seen by consultative SSA examiner Dr. Samuel Balderman, who found: "[d]iagnosis is status post cervical spine fusion, probably failed. He has moderate to marked limitations in frequent changes in positions of head. Moderate to marked limitations in lifting and carrying with the upper extremities due to neck pain." (Tr. 183-186).

On May 9, 2003, plaintiff was examined by SSA disability analyst G. Wise. Wise determined that plaintiff can lift and carry no more than ten pounds, and can sit, stand or walk six hours in an eight hour workday. (Tr. 187-192). Wise noted that pushing, pulling and reaching with the upper extremities is limited, and noted that the plaintiff's complaints "are supported by [medical evidence of record] and are seen as credible." (Tr. 190). Given these limitations, Wise opined that plaintiff retained the residual functional capacity to perform the jobs of order caller, sandwich board carrier, and announcer. (Tr. 193).

An MRI taken on June 4, 2004 demonstrated multilevel foraminal stenosis, myelomalacia (softening of the spinal cord) at C6, multilevel central stenosis and effacement of the cord. (Tr. 212). On June 14, 2005, Dr. Rodenhouse again examined plaintiff and noted profound weakness in his upper left arm. On December 14, 2004, Dr. Rodenhouse noted that although plaintiff had improved, he remained significantly disabled, with severe muscle weakness in the left triceps and atrophy in the intrinsics of the left hand, rendering plaintiff incapable of performing work requiring fine motor coordination with the left hand. (Tr. 200).

On December 15, 2004, Dr. Rodenhouse completed an RFC assessment for plaintiff, noting extensive limitations in plaintiff's ability to use his hands and arms, and limited ability to remain in seated or standing positions. (Tr. 197-199).

A hearing before the ALJ was held on March 2, 2006. (Tr. 19). Plaintiff testified that he experienced tingling in two fingers on his left, dominant hand, and was unable to straighten them. (Tr. 96). Although plaintiff's left arm strength had improved over time, plaintiff continued to experience weakness in his left arm and fingers, with poor grip and poor finger coordination, and had difficulty holding onto small objects, such as money. (Tr. 131, 232). Plaintiff stated that although his symptoms were not usually painful, he experienced severe pain with overexercise. (Tr. 238). Plaintiff estimated that he could exercise for up to 30 minutes, lift two pounds with his left arm and up to ten pounds with his right arm, stand or walk for one hour, climb stairs without difficulty, bend and reach. (Tr. 234-235). Plaintiff could not reach overhead at all. (Tr. 241). Plaintiff's daily activities included walking, swimming, performing prescribed home exercises including lifting weights, caring for his daughter and mentally handicapped brother, cooking, light housework, and attending church. (Tr. 128, 131, 134-150, 233-234, 236-240).

A vocational expert, Victor Apparichy, characterized plaintiff's prior relevant work as a foundry laborer and/or foundry metallurgist as unskilled, with a light to heavy exertional level. (Tr. 242-243). The ALJ asked Apparichy whether an individual of plaintiff's background and education, with the ability to lift ten pounds frequently, walk or sit for up to six hours, with "limited pushing and pulling with the upper extremities . . . mainly with the shoulders elevated, no postural limitations," with no overhead reaching or reaching to the sides, could perform work existing in significant numbers in the national economy. (Tr. 243). Apparichy replied that plaintiff could not perform his past relevant work as a foundry laborer, but could perform the positions of surveillance system monitor, non-emergency service dispatcher, and telemarketer. (Tr. 244-247). When asked whether jobs would exist for such an individual if additional limitations were added, including only occasional reaching, handling or fingering, lifting no more than ten pounds, with no constant looking

up or down and only occasional turning of the neck to the left or right, less than occasional stooping, and frequent interference with attention and concentration due to symptoms, Apparichy stated that no jobs would exist for such an individual.  (Tr. 248).

## DISCUSSION

### I.  Standard for Determining Disability

A person is considered disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).  In order to determine whether a claimant is disabled, an ALJ employs a five-step inquiry:

> The first step determines whether the claimant is engaged in 'substantial gainful activity.'  If he is, benefits are denied.  If he is not engaged in such activity, the process moves to the second step, which decides whether the claimant's condition or impairment is 'severe'– i.e., one that significantly limits his physical or mental ability to do basic work activities.  If the impairment is not severe, benefits are denied.  If the impairment is severe, the third step determines whether the claimant's impairments meet or equal those set forth in the 'Listing of Impairments'. . . contained in subpart P, appendix 1, of the regulations. . . .  If the claimant's impairments are not listed, the process moves to the fourth step, which assesses the individual's 'residual functional capacity' (RFC); this assessment measures the claimant's capacity to engage in basic work activities.  If the claimant's RFC permits him to perform his prior work, benefits are denied.  If the claimant is not capable of doing his past work, a decision is made under the fifth and final step whether, in light of his RFC, age, education, and work experience, he has the capacity to perform other work.  If he does not, benefits are awarded.

*Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986) (citations omitted).  It is well-settled that plaintiff bears the burden of proof at the first four steps of the analysis.  At the fifth and final stage of this process, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work that exists in the national economy.  *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

### II.    The ALJ's Decision

At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 27, 2001.  The ALJ concluded that plaintiff had severe impairments, consisting of cervical

degenerative disc disease and a back disorder, that did not meet or equal a listed impairment. (Tr. 19-22). At step four, the ALJ concluded that plaintiff could not perform his past relevant work, but nonetheless retained the RFC to perform light or sedentary work. Specifically, the ALJ found that plaintiff could perform work with restrictions in lifting and reaching overhead. (Tr. 24). At step five, the ALJ utilized the Medical-Vocational Grid Rules and heard testimony from a vocational expert, and concluded, based on plaintiff's age, education, and work experience, that plaintiff was not disabled because he retained the RFC to perform work at the sedentary exertional level, lifting and carrying up to ten pounds, with limitations in pushing and pulling with his arms, and reaching overhead and to the side, and that jobs consistent with such limitations existed in significant numbers in the national economy. (Tr. 25).

### III. Standards of Review

The Commissioner's decision that plaintiff was ineligible to receive benefits must be affirmed if it applies the correct legal standards and is supported by substantial evidence. 42 U.S.C. § 405(g); *Shaw v. Carter*, 221 F.3d 126, 131 (2d Cir. 2000); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). If the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force," a district court cannot not substitute its own judgment for that of the Commissioner. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *see also Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) ("[i]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled.").

Such a deferential standard, however, is not applied to the Commissioner's conclusions of law. *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984); *accord Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). The Court must determine if the Commissioner's decision applied the correct

legal standards in finding that plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112. Only after finding that the correct legal standards were applied should the Court consider the substantiality of the evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987). "'Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.'" *Schaal*, 134 F.3d at 504 (quoting *Johnson*, 817 F.2d at 986).

## IV. Plaintiff's Alleged Disability

I find that the Commissioner's decision regarding plaintiff's disability is not supported by substantial evidence, that there is persuasive evidence of disability in the record, and that the matter should be remanded for the calculation and payment of benefits.

Initially, I agree with the plaintiff that the ALJ erred when weighing the opinion of plaintiff's treating physician with respect to his exertional limitations. Furthermore, the ALJ's finding that there were jobs in the economy that plaintiff could perform with his limitations is not supported by substantial evidence.

### A. Treating Physician's Opinion

The ALJ erred by failing to give controlling weight to the opinion of plaintiff's treating neurosurgeon, Dr. Rodenhouse. It is well-settled that "the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw*, 221 F.3d at 134; *see* 20 C.F.R. § 404.1527(d)(2). In determining what weight to give a treating physician's opinion, the Commissioner must consider: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence presented to support the treating physician's opinion; (4) whether the opinion is consistent with the record as whole; and (5) whether the opinion is offered by a specialist. 20 C.F.R. § 404.1527(d). Further, the ALJ must articulate his reasons for assigning the weight that he does

accord to a treating physician's opinion. *Shaw*, 221 F.3d at 134; *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("[f]ailure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.") (internal quotations omitted).

On December 15, 2004, Dr. Rodenhouse completed an RFC assessment for plaintiff concerning his upper extremities. He determined that plaintiff was limited to lifting less than ten pounds, would need to alternate between standing and sitting, is unable to repeatedly grasp or hold onto objects or tools, required frequent resting of hands, and is unable to reach with arms extended or to use hands or arms in a repetitive manner without aggravating his symptoms. (Tr. 197-199).

On June 22, 2005, Dr. Rodenhouse completed a second RFC assessment, specific to plaintiff's cervical spine. He indicated that plaintiff's experience of chronic neck pain and other symptoms would "frequently" interfere with his attention and concentration, that plaintiff needed to be able to shift positions at will and take unscheduled 10-15 minute breaks during the work day, could occasionally lift up to ten pounds, was unable to hold his head in a sustained or static position, was unable to twist or crouch and could rarely stoop or climb, had significant limitations with respect to reaching, handling, and fingering, and would have "good days" and "bad days." (Tr. 201-205).

The ALJ rejected Dr. Rodenhouse's opinions, deferring instead to the opinions of examining physical therapist, Stacey Griffith, and examining physician Dr. Balderman, who respectively opined that plaintiff could perform a range of sedentary to light work, and that despite diminished strength in his upper extremities, plaintiff retained normal grip strength and hand and finger dexterity. (Tr. 24-25, 105-106). Nonetheless, the ALJ cited no evidence of record to contradict Dr. Rodenhouse's assessments, or to explain how the opinions of a physical therapist or an examining physician more accurately or credibly described plaintiff's condition than that of his treating neurosurgeon.

I find that the ALJ's conclusion is not supported by substantial evidence. A treating physician's opinion is entitled to controlling weight if it is well-supported by medical findings and not inconsistent with other substantial evidence. *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999). If an ALJ opts not to afford controlling weight to the opinion of a treating physician, the ALJ

must consider: (1) the examining relationship; (2) the extent of the treatment relationship; (3) medical support for the opinion: (4) consistency; and (5) the physician's specialization, along with any other relevant factors. 29 C.F.R. §404.1527(d)(2). An ALJ's failure to apply these factors and provide reasons for the weight given to the treating physician's report is reversible error. *See Snell v. Apfel*, 177 F.3d 128,1 34 (2d Cir. 1999); *Schall v. Apfel*, 134 F.3d 496 (2d Cir. 1998).

The ALJ's determination that Dr. Rodenhouse's opinion was not entitled to controlling weight failed to properly consider the relevant factors and is unsupported by the evidence of record. *See* 20 C.F.R. § 404.1527(d)(2). Dr. Rodenhouse is a neurosurgeon who treated plaintiff on a routine basis, including performing a surgical intervention and post-surgical followup, for at least three years prior to plaintiff's disability hearing. His opinions concerning plaintiff's limitations are supported by objective medical evidence in the record, including imaging studies showing moderate to severe neuroforaminal stenosis from C3-C7 (Tr. 160-162) as well as partial truncation of the right C5 nerve root and dural defects (Tr. 179-181), and an MRI showing foraminal stenosis and cord effacement (Tr. 211-212), all of which would be expected to produce symptoms of pain and weakness in the neck and upper extremities. Moreover, Dr. Rodenhouse's conclusions are consistent with the opinions of several of the examining physicians that plaintiff's surgery had "failed," and that plaintiff has decreased muscle strength, sensation, grip strength and motor coordination, particularly in his left arm, as well as pain and diminished range of motion in his neck. (Tr. 127-129, 138-139, 146, 151, 185, 194-196, 213-215). In contrast, the opinions of Griffith and Dr. Balderman cited by the ALJ (Tr. 105-106, 183-186) were each based on a single examination, and without the benefit of a complete review of plaintiff's medical records.

**B.      The Commissioner's Burden to Prove That Plaintiff Can Perform Other Work**

At step five of the disability determination, the Commissioner has the burden of proving that there were other jobs that plaintiff could perform, in light of his age, education, work experience, and ability to perform less than the full range of light and/or sedentary work. *See Draegert v.*

*Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002). The Commissioner failed to meet that burden here when he relied on testimony by a vocational expert to determine that plaintiff is not disabled.

As set forth above, the vocational expert's testimony was based upon the ALJ's hypothetical supposition that plaintiff could perform a range of sedentary work including the lifting and carrying of ten pounds, with limitations only in pushing and pulling in the upper extremity, and no overhead or side lifting. As such, the ALJ's finding that plaintiff could perform other jobs did not incorporate most of the limitations identified by plaintiff's treating physician, and the record lacks substantial evidence that plaintiff could perform other work. *See Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980); *Mathews v. Barnhart*, 220 F. Supp. 2d 171, 175-76 (W.D.N.Y. 2002).

A remand for the calculation of benefits is warranted because further administrative proceedings or another hearing would serve no useful purpose. *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)(ere the existing record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose, a remand for calculation of benefits is appropriate); *Martinez v. Commissioner*, 262 F. Supp. 2d 40, 49 (W.D.N.Y. 2003) (same). While the ALJ's conclusion that his first hypothetical accurately described plaintiff's limitations was not supported by substantial evidence, the ALJ *did* pose a hypothetical to the vocational expert which incorporated the additional limitations in hand coordination, concentration, short breaks, and neck motion, etc. that had been identified by Dr. Rodenhouse. In answer to that hypothetical, the vocational expert testified that no jobs existed in the national economy which could be performed by an individual with those limitations. (Tr. 248).

Based on the foregoing, the Commissioner has failed to meet his burden to explain why the opinion of plaintiff's treating physician was not afforded controlling weight and why plaintiff's testimony concerning his limitations was wholly discounted, or to demonstrate that plaintiff can perform any work that exists in the economy. The record is clear, however, that if the opinion of plaintiff's treating physician controls, there are no jobs in the national economy that plaintiff can perform. Under the circumstances, remand for the calculation and payment of benefits is warranted.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment (Dkt. #3) is granted, and the matter is remanded for the calculation and payment of benefits. Defendant's motion for summary judgment (Dkt. #4) is denied, and plaintiff's motion for remand on the alternate grounds of considering new and material evidence (Dkt. #8) is denied as moot.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
September 3, 2008.